UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY CABRAL, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>DAVID NOLAN, )<br>)<br>Respondent. )<br>) | Civil Action No. 05-11069-PBS |

### RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PETITION

Respondent David Nolan (the "Respondent") hereby submits this Memorandum of Law in support of his Motion to Dismiss Petition (the "Motion").[1] The petition for a writ of habeas corpus (the "Petition") filed by Petitioner Anthony Cabral (the "Petitioner"), an inmate at the Massachusetts Correctional Institution at Cedar Junction ("MCI - Cedar Junction"), cannot be entertained, because it is predicated entirely on allegations that his rights under the Fourth Amendment to the United States Constitution were violated.[2]

---

[1] Filed herewith is an Appendix containing documents relevant to the issue of whether the Petitioner previously exhausted state remedies, pursuant to this Court's order of May 24, 2005. The offering of such documents should not be construed as implying that the Respondent considers the Petitioner to have fully complied with the statutory exhaustion requirement.

[2] Since the Petition must be dismissed for the grounds stated herein, the Respondent does not address herein the merits of the Petition. Should this Court rule that the Petitioner may proceed with his habeas corpus action, the Respondent respectfully requests the opportunity to file an answer and a proposed scheduling order for the parties to brief the merits of the Petition.

## BACKGROUND

**I.    State pre-trial proceedings**

In July 1999, he was indicted on two counts of robbery while armed and masked or disguised, in violation of M.G.L. c. 265, § 17.  (First Super. Ct. Docket, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit A; Second Super. Ct. Docket, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit B; Indictment No. 1, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit E; Indictment No. 2, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit F.)  He pled not guilty to both counts at his arraignment in the Bristol County, Massachusetts, Superior Court (the "Superior Court") on August 11 of that year.  (First Super. Ct. Docket; Second Super. Ct. Docket.)

Among the pre-trial motions filed by the Petitioner were several that challenged the seizure of evidence from his vehicle and from the apartment of one John Kazen ("Kazen"), the Petitioner's arrest within Kazen's apartment, and the use of any fruits of these seizures.  In particular, he filed a motion to suppress such evidence on August 21, 2000.  (First Super. Ct. Docket; Def.'s Mot. Suppress, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit G; Def.'s Mem. Supp. Mot. Suppress, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit H.)  The Petitioner argued therein that the police lacked probable cause or any other legal justification to search his vehicle.  (Def.'s Mot. Suppress; Def.'s Mem. Supp. Mot. Suppress.)  In particular, he claimed that there were inconsistencies in police officers' accounts on this subject, and that witnesses testified that they never provided the police with certain information that the police claimed to receive from them.  (Def.'s Mot. Suppress; Def.'s Mem. Supp. Mot. Suppress.)  The Petitioner further contended that

he had standing to challenge the legality of the search of Kazen's apartment, in which he had a reasonable expectation of privacy, and that no consent to search was freely and voluntarily provided by anyone with authority to provide it. (Def.'s Mot. Suppress; Def.'s Mem. Supp. Mot. Suppress.) He also asserted that there were no exigent circumstances to justify that search, that the search in any event would have exceeded the scope of any such exigent circumstances, and that the seized evidence was neither in plain view nor found as a result of a protective sweep. (Def.'s Mot. Suppress; Def.'s Mem. Supp. Mot. Suppress.)

A hearing on the motion to suppress began on August 21, 2000, continued on September 28 and 29, 2000, and then concluded on November 8, 2000. (Second Super. Ct. Docket; Def.'s Br. to App. Ct.) The motion was denied in an order issued on or about December 18, 2000, in which Justice Daniel F. Toomey stated as follows:

> Having found that the police entry into and search of the motor vehicle was reasonable in light of the condition of the vehicle and the probable cause/exigent circumstances possessed by the officers, having found that the police entry into Kazen's apartment was supported by probable cause, exigent circumstances and consent and having found that items seized in the apartment were obtained incident to the lawful arrest of [the defendant], in plain view and in connection with a reasonable protective sweep of the apartment, the motion to suppress the items found in the vehicle and in the apartment is denied.

(Second Super. Ct. Docket; Order on Def.'s Mot. Suppress, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit I.)

On December 22, 2000, the Petitioner filed a motion to extend the time for filing an interlocutory appeal of that decision until January 19, 2001, and his motion was allowed. (Second Super. Ct. Docket; Order on Def.'s Mot. Extend Time, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit J.) The docket does not reflect any steps taken by the Petitioner to commence such an interlocutory appeal prior to January 19,

2001. (Second Super. Ct. Docket.) The Petitioner did, however, file a motion for reconsideration of the denial of his motion to suppress on August 27, 2001. (Id.) In an August 30, 2001 decision, the Superior Court allowed reconsideration, but again denied the motion to suppress. (Id.) On September 11, 2001, the Petitioner filed notices of appeal regarding the court's decisions on his motion to suppress his motion for reconsideration of the denial of his motion to suppress. (Id.) The second of these notices of appeal was deemed untimely by the Superior Court in an order dated November 8, 2001.[3] (Id.) The Petitioner then, on November 20, 2001, filed a notice of appeal and again moved for reconsideration of the denial of his motion to suppress. (Id.) That motion was denied on November 23, 2001. (Id.) He filed another notice of appeal on December 26, 2001. (Id.)

The Petitioner also sought to block the admission of the seized evidence by requesting a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (holding that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request"). Specifically, he filed a motion to suppress and for a Franks hearing on June 21, 2001, another such motion on July 24, 2001, and an additional motion for a Franks hearing on August 27, 2001. (Second Super. Ct. Docket; Def.'s Mot. Franks Hr'g, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit K; Def.'s Mem. Supp. Mot. Franks Hr'g, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit L.) His request for a Franks hearing was based on a claim that the officer's affidavit in support of the warrant to search

4

Kazen's apartment contained false and misleading statements, which statements supplied the probable cause for the warrant. (Def.'s Mem. Supp. Mot. Franks Hr'g.)

The Superior Court denied his request for a Franks hearing on August 30, 2001. (Second Super. Ct. Docket.) Justice Nonnie S. Burnes concluded as follows:

> After hearing and [review?], this motion is denied. There has been no showing that the misstatements, if any, in the affidavit in support of the application for the search warrant were intentionally or recklessly made but, in any case, probable cause existed for issuance of the search warrant even without these statements.

(Order on Def.'s Mot. Franks Hr'g, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit M.) On November 26, 2001, the Petitioner filed a renewed motion to suppress and for a Franks hearing. (Second Super. Ct. Docket.)

## II. Disposition of the state charges, and post-trial proceedings

On January 9, 2002, one of the two robbery counts against the Petitioner was nolle prossed. (Id.) He was then tried in the Superior Court between January 9 and January 11, 2002. (Id.) On the last day of trial, he filed a motion for a required finding of not guilty, but was found guilty of unarmed robbery, a lesser offense to the one with which he was originally charged. (Id.)

On January 25, 2002, the Petitioner was sentenced to serve a term of between eight and ten years at MCI – Cedar Junction, and was assessed a $60 victim-witness fee. (Id.) He filed a notice of appeal of his sentence on January 31, 2002, which he withdrew on September 13, 2002. (Id.) The Petitioner additionally filed a notice of appeal on February 13, 2002, and a motion to revise and revoke his sentence on March 4, 2002. (Id.) Upon consideration of that motion, the Superior Court determined on January 5, 2005 that a sentence of between eight and nine years in

---

[3] This order may have been intended to cover both notices of appeal.

state prison was fair and appropriate.  (Id.)  The Petitioner then filed another notice of appeal of his sentence on January 21, 2005.  (Id.)  This was followed by his filing of an additional notice of appeal on January 27, 2005.  (Id.)

On March 21, 2003, as the Petitioner's motion to revise and revoke his sentence was pending in the Superior Court, his direct appeal of his conviction was entered on the docket of the Massachusetts Appeals Court (the "Appeals Court").  (App. Ct. Docket, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit C.)  The Petitioner's counsel filed one brief that in part contained certain arguments advanced pursuant to Commonwealth v. Moffett, 383 Mass. 201, 208 (1981) ("If there is nothing to support a contention which the defendant, despite counsel's attempts to dissuade him, insists on pursuing, we think it preferable that counsel present the contention succinctly in the brief in a way that will do the least harm to the defendant's cause.  If appointed counsel, on grounds of professional ethics deems it absolutely necessary to dissociate himself or herself from purportedly frivolous points, counsel may so state in a preface to the brief . . . [in which case counsel must, inter alia,] inform him that he may present additional arguments to the appellate court within thirty days." (citations omitted)).  That brief was supplemented by two additional Moffett briefs filed by the Petitioner pro se.  (App. Ct. Docket.)  Commonwealth v. Cabral, 62 Mass. App. Ct. 1111, 818 N.E.2d 640 (2004).  Among the arguments advanced by the Petitioner were the following:  the Superior Court "erred in not suppressing seized evidence"; his motion to suppress and his Franks motion were thus erroneously denied; his "counsel was ineffective for not filing an interlocutory appeal from the denial of his motion to suppress"; and "the cumulative effect of the [Superior Court's] errors mandates a new trial."  Cabral, 62 Mass. App. Ct. 1111, 818 N.E.2d 640.  In a November 18, 2004 decision, the Appeals Court affirmed the judgment entered against the Petitioner,

6

stating that it gave "due consideration to the various claims and reject[ed] them for substantially the reasons cited by the judges in their memoranda and rulings of law and by the Commonwealth in its brief." (App. Ct. Docket.) Cabral, 62 Mass. App. Ct. 1111, 818 N.E.2d 640.

The Petitioner filed an application for leave to obtain further appellate review ("ALOFAR") with the Massachusetts Supreme Judicial Court ("SJC") on March 18, 2005, having obtained leave to file the same out of time. (SJC Docket, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit D.) The SJC denied his application on April 27, 2005. (Id.) Commonwealth v. Cabral, 444 Mass. 1101, 826 N.E.2d 201 (2005) (table decision).

The Petition was filed in the United States District Court on May 20, 2005. The Petitioner asserted therein that he was entitled to habeas corpus relief on the grounds that the "Petitioner's 4th and 14th Amendment rights were violated when evidence obtained pursuant to an unconstitutional search and seizure was relied upon to find him guilty." (Pet. ¶ 12.A.) In support of this claim, the Petitioner stated as follows:

> Petitioner's automobile was unlawfully searched, and items recovered from within unlawfully seized, by police who then used the unlawfully seized evidence to convict Petitioner"; and police made a warrantless entry into a third-party's dwelling, where Petitioner had a reasonable expectation of privacy, and searched a pocketbook lawfully therein, that they had no probable cause to search, where no exigent circumstances existed, thereby obtaining fruits of the poisonous tree, which was improperly and unconstitutionally used against the Petitioner at trial.

(Id.)

**ARGUMENT**

**The Petition cannot be entertained, because it is predicated entirely on alleged Fourth Amendment violations.**

This habeas corpus action cannot proceed, because it is predicated wholly on claims that the Petitioner's rights under the U.S. Constitution's Fourth Amendment, made applicable to the States by its Fourteenth Amendment, were violated.  The United States Supreme Court has made clear that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus belief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 481-96 (1976); accord Sanna v. DiPaolo, 265 F.3d 1, 8-10 (2001) ("Stone thus stands for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of  a prisoner's Fourth Amendment claims.").

Examining the purposes behind the judicially created rule that unlawfully seized evidence must be excluded at trial, the Stone Court observed that "the primary justification for the exclusionary rule . . . is the deterrence of police conduct that violates Fourth Amendment rights." 428 U.S. at 482-86 (noting the Court's statement in Elkins v. United States, 364 U.S. 206, 217 (1960), that "'[t]he rule is calculated to prevent, not to repair'"); accord Sanna, 265 F.3d at 7 ("[T]he Supreme Court has recognized that the prophylactic remedy for such violations typically available on direct review – the exclusion of the evidence derived, directly or indirectly, from the violation – is designed to deter law enforcement personnel from disregarding constitutional mandates").  Allowing for federal collateral review of search-and-seizure claims would only minimally advance that prophylactic purpose, the High Court concluded, and any resulting benefits "would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice."  Stone, 428 U.S. at 486-96 (noting that "the policies behind the

8

exclusionary rule are not absolute. Rather, they must be evaluated in light of competing policies."); accord Sanna, 265 F.3d at 8 ("The Stone Court reasoned that this cost far exceeds the marginal increase in deterrent effect that might result from extending the exclusionary rule to habeas proceedings."). Such costs may include "deflect[ion of] the truthfinding process" and potentially "free[ing] the guilty," thus affording a guilty defendant a windfall that is "contrary to the idea of proportionality that is essential to the concept of justice," and possibly "generating disrespect for the law and administration of justice." Stone, 428 U.S. at 490-92 & n.31 (noting that "in the case of a typical Fourth Amendment claim, asserted on collateral attack, a convicted defendant is usually asking society to determine an issue that has no bearing on the basic justice of his incarceration."); see also Sanna, 265 F.3d at 8 ("The exclusionary rule is not without its vices, however; most notably, it too often results in keeping relevant, reliable information from the factfinder.").

The Petition here is based solely on "the ground that evidence obtained in an unconstitutional search or seizure was introduced at [the Petitioner's] trial," Stone, 428 U.S. at 494. The single ground for relief set forth in the Petition is that the "Petitioner's 4th and 14th Amendment rights were violated when evidence obtained pursuant to an unconstitutional search and seizure was relied upon to find him guilty." (Pet. ¶ 12.A.) Moreover, the statements advanced in support of this claim are laden with Fourth Amendment concepts. (Id. (alleging "warrantless entry into" dwelling "where Petitioner had a reasonable expectation of privacy," and search of pocketbook without "probable cause to search, where no exigent circumstances existed, thereby obtaining fruits of the poisonous tree," which were improperly used at trial).) Accordingly, his Petition fails to state a claim that is cognizable in a habeas corpus action. Stone, 428 U.S. at 481-96; Sanna, 265 F.3d at 8-10.

The Petitioner's action cannot be salvaged by any suggestion that he was not "provided an opportunity for full and fair litigation of [his] Fourth Amendment claim," Stone, 428 U.S. at 494; see also Sanna, 265 F.3d at 8 (noting that, under Stone, a state prisoner must have had a "realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system" in order for federal collateral review of such a claim to be barred).  The burden of proving the lack of such an opportunity lies with the Petitioner.  Sanna, 265 F.3d at 8.  That burden was found unmet in Sanna, where the court concluded that it "hardly could imagine a more thorough set of procedures for the litigation of a Fourth Amendment claim."  Id. at 8.  The petitioner there "filed two separate pretrial motions to suppress evidence," and the court allowed discovery, held "a four-day evidentiary hearing," and "issued a reasoned opinion."  Id.  "On direct appeal, the SJC pondered the petitioner's plea yet again and found it wanting," rejecting certain specific arguments.  Id.  Throughout the process, the petitioner had been represented by counsel.  Id.

The opportunities afforded to the Petitioner here were little different.  The Superior Court entertained the Petitioner's motion to suppress the seized evidence at issue, and conducted a hearing on that motion that spanned the course of four days.  (Second Super. Ct. Docket.; Order on Def.'s Mot. Suppress; Def.'s Br. to App. Ct, a true and accurate copy of which is attached to the accompanying Appendix as Exhibit N.)  Its denial of that motion was based upon the following findings:  the search of the vehicle was warranted by probable cause and exigent circumstances; the entry into the apartment was supported by probable cause, exigent circumstances, and consent; and items therein were in plain view and were seized incident to a lawful arrest and in connection with a reasonable protective sweep of the apartment.  (Order on Def.'s Mot. Suppress.)  The court granted an extension of time for the Petitioner to file a notice of appeal of that decision, but the Petitioner failed to do so in advance of the new deadline.

(Second Super. Ct. Docket; Order on Def.'s Mot. Extend Time.)  The fact that he did not *take advantage of* this opportunity does not mean that that he was not *provided* the opportunity.  See Sanna, 265 F.3d at 9 (focusing on whether state made suitable procedures available, citing holding of Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978), that "habeas corpus review [is] precluded if [the] state provides a suitable procedure for full and fair opportunity to litigate Fourth Amendment claims, regardless of whether the petitioner employs that procedure").  Upon motion, the court agreed to reconsider its decision, but nevertheless reached the same result.  (Second Super. Ct. Docket.)  While a notice of appeal of these decisions was deemed ineffective by the court, that decision was based on the fact that the Petitioner had failed to timely file it.  (Id.)  As a result, the Petitioner filed yet another motion to reconsider the decision on the motion to suppress, and it was denied.  (Id.)

The court also considered the Petitioner's request for a Franks hearing and held a hearing concerning that request.  (Second Super. Ct. Docket; Order on Def.'s Mot. Franks Hr'g.)  It concluded, however, that there had been no showing that any misstatements in support of the search warrant application had been intentionally or recklessly made, and that there had been probable cause for the issuance of a search warrant even without any such statements.  (Order on Def.'s Mot. Franks Hr'g.)

Following his conviction, the Petitioner commenced a direct appeal, which in part raised Fourth Amendment challenges to the seizures of evidence at issue here.  (App. Ct. Docket; Def.'s Br. to App. Ct.; Def.'s First Supp. Br. to App. Ct., a true and accurate copy of which is attached to the accompanying Appendix as Exhibit O; Def.'s Second Supp. Br. to App. Ct., a true and accurate copy of which is attached to the accompanying Appendix as Exhibit P.)  Indeed, he filed three briefs to the Appeals Court, all of which appear to have been accepted by

it.  (App. Ct. Docket.)  Cabral, 62 Mass. App. Ct. 1111, 818 N.E.2d 640.  That court indicated that it gave "due consideration to the various claims," but nevertheless "reject[ed] them for substantially the reasons cited by the judges in their memoranda and rulings of law and by the Commonwealth in its brief."  Cabral, 62 Mass. App. Ct. 1111, 818 N.E.2d 640.  After that decision was rendered, the Petitioner obtained leave to file an ALOFAR with the SJC out of time.  (SJC Docket.)  His ALOFAR was, however, denied.  (Id.)

At all points critical to the analysis herein, the Petitioner was represented by counsel.  (First Super. Ct. Docket; Second Super. Ct. Docket; App. Ct. Docket.)  While he was allowed to proceed pro se with standby counsel in the Superior Court beginning on August 30, 2001, he was represented by counsel until the decisions were rendered on his motion to suppress and motion for a Franks hearing.  (First Super. Ct. Docket; Second Super. Ct. Docket.)  Indeed, both motions, as ruled on by the Superior Court, were authored by counsel.  (Def.'s Mot. Suppress; Def.'s Mem. Supp. Mot. Suppress; Def.'s Mot. Franks Hr'g; Def.'s Mem. Supp. Mot. Franks Hr'g.)  Additionally, while he filed certain papers pro se in the Appeals Court, he was represented by counsel on appeal to that court, and one of his briefs to that court was authored by counsel.  (App. Ct. Docket; Def.'s Br. to App. Ct.)

In summary, the Petitioner's Fourth Amendment claims were extensively briefed by counsel to state trial and appellate courts, and considered by such courts.  Moreover, such courts leniently afforded him additional opportunities to be heard by reconsidering the decision on his motion to suppress, granting leave for him to pursue appeals out of time, and allowing him to file multiple appellate briefs.  He was given extensive opportunities to be heard on his Fourth Amendment claims.

The Petitioner could not succeed in any attempt to show that he was nevertheless denied a full and fair opportunity to litigate his Fourth Amendment claims on the grounds that the state courts reached an incorrect result concerning such claims. As the Sanna court made clear:

> Although a federal habeas court may inquire into the adequacy and fairness of available state court procedures for the adjudication of Fourth Amendment claims, its inquiry ordinarily ends upon a determination that those proceedings pass muster. Put another way, 'a full and fair opportunity' to litigate means that the state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations. So long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of such a set of procedures, a federal habeas court lacks the authority, under Stone, to second-guess the accuracy of the state court's resolution of those claims. Hence, the mistaken outcome of a state court suppression hearing, standing alone, cannot be treated as a denial of the opportunity fully and fairly to litigate a Fourth Amendment claim (and, thus, cannot open the door to federal habeas review).

Id. at 8-9 (citations omitted).

Thus, there can be no doubt that the Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claims at the state level. Accordingly, he cannot obtain federal collateral review of such claims, and his habeas corpus action based entirely on such claims must be dismissed. Stone, 428 U.S. at 481-96; Sanna, 265 F.3d at 8-10.

## **CONCLUSION**

For the foregoing reasons, this Court should allow the Respondent's Motion and dismiss the Petition in its entirety.

        Respectfully submitted,

        THOMAS F. REILLY
        Attorney General


        /s/ Randall E. Ravitz
        Randall E. Ravitz (BBO # 643381)
        Assistant Attorney General
        Criminal Bureau
        One Ashburton Place
        Boston, Massachusetts  02108
        (617) 727-2200, ext. 2852

Dated:  June 30, 2005


**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that a true copy of the above document was served on June 30, 2005, by first-class mail, postage prepaid, upon:

Anthony Cabral
W-70469
MCI – Cedar Junction
P.O. Box 100
South Walpole, MA  02071

pro se


        /s/ Randall E. Ravitz
        Randall E. Ravitz