# United States District Court
# District of Massachusetts

ANTHONY CABRAL,
    Petitioner,

v.                                CIVIL ACTION NO. 2005-11069-PBS

DAVID NOLAN,
    SUPERINTENDENT,
    MCI-Cedar Junction,
    Respondent.

## *REPORT AND RECOMMENDATION ON MOTION TO DISMISS PETITION (#5)*

COLLINGS, U.S.M.J.

### I. Introduction

On or about May 20, 2005, Anthony Cabral (hereinafter "Cabral" or the

"Petitioner") commenced the instant action by filing a Petition for Writ of Habeas Corpus (hereinafter the "Petition") pursuant to Title 28 U.S.C. § 2254. (#1)  On June 30, 2005, the Respondent David Nolan (hereinafter the "Respondent") filed a Motion to Dismiss Petition (#5) with supporting Memorandum of Law (#6) and an Appendix. (#7) In his memorandum of law, the Respondent argues that the Petition should be dismissed because it is "predicated entirely on allegations that [the Petitioner's] rights under the Fourth Amendment...were violated" and thus "fails to state a claim that is cognizable in a habeas corpus action." (#6, pp. 8-9)

On or about September 6, 2005, the Petitioner filed an Opposition in Response to Respondent's Memorandum in Support of his Motion to Dismiss (#12) and filed a Memorandum in Support of § 2254 of Anthony Cabral (#13). On September 23, 2005, the District Judge to whom this case is assigned (Saris, J.) referred the Respondent's motion to dismiss to the undersigned for a Report and Recommendation. (#15)  For the reasons discussed below, this Court shall recommend that the Respondent's Motion to Dismiss be allowed.

## II. The Facts and the Procedural History[1]

---

[1] The Petitioner's recitation of the facts and procedural history is set out at pp. 1-3 of the Memorandum of Law in Support of Petition for Writ of Habeas Corpus (#13), and the Respondent's version is at pp. 2-7

On June 21, 1999, around 6:30 a.m., a masked man in a winter coat, armed with a spray bottle held up the Mutual Gas Station (hereinafter the "Station") in Fall River, Massachusetts. (#8, Exh. Q, pp. 8-9) The thief made off with the Station manager's purse and the Station's deposits totaling at least $5000. (#8, Exh. Q, pp. 8-9)

The masked man, later identified as Cabral, absconded from the scene of the crime in a blue Ford Thunderbird. (#8, Exh. Q, p. 10)  Charles Moniz (hereinafter "Moniz"), an eyewitness to the robber's escape, recognized the thief as Cabral when he took of his mask while fleeing the scene. (#8, Exh. Q, p. 10) Moniz followed Cabral and saw him enter the multi-family house at 181 Division Street where Moniz lived with his mother. (#8, Exh. Q, pp. 11-12)

After receiving a description of the thief's vehicle and information as to his whereabouts from Moniz, the police arrived at 181 Division Street to find the blue Ford Thunderbird parked at an angle and jutting out into the street. (#8, Exh. Q, p. 13)  The driver's door was open, the engine was running, but

---

of his Memorandum of Law in Support of his Motion to Dismiss Petition (#6). I hereby adopt the version of the facts from the Commonwealth's brief and Record Appendix filed in connection with *Commonwealth v. Cabral*, as relied upon by the Massachusetts Appeals Court in *Commonwealth v. Cabral,* 62 Mass.App.Ct. 1111, 818 N.E.2d 640 (2004)(unpublished disposition). I presume all of those facts to be true as I must pursuant to 28 U.S.C. § 2254(e)(1). Unless otherwise noted, for the purposes of brevity, I restate only those facts that are relevant for purposes of issuing a Report and Recommendation on the instant motion and often quote the facts verbatim from the Commonwealth's Brief and Record Appendix filed in connection with *Commonwealth v. Cabral*, Case No. 2003-P-397 (Citations to the facts are to the Commonwealth's brief #8, Exh. Q, and citations to the procedural history are from Respondent's Memorandum, #6).

the driver was gone. (#8, Exh. Q, p. 13) Inside the car, police found a homemade Father's Day card on which was printed the name "Tony Cabral." (#8, Exh. Q, p. 13)

The police went up to the second floor apartment of the house and, after seeing Cabral stick his head out of a window, knocked on the apartment of John Kazen (hereinafter "Kazen"). (#8, Exh. Q, p. 14) The officers were allowed entry and found Cabral inside breathing heavily and sweating profusely. (#8, Exh. Q, p. 14) While speaking to Kazen, an officer noticed through the open bedroom door a woman's purse on the bed; back in the front room, an officer found a spray bottle, mask, winter coat and boots that were later identified at trial as those the robber had worn. (#8, Exh. Q, pp. 15-16) The police arrested Cabral and two hours later returned to Kazen's apartment with a search warrant where they located a white plastic bag containing nearly $8000 in a laundry basket under some clothes. (#8, Exh. Q, p. 16) They also found some more money and identification belonging to the Station's manager under the couch cushions. (#8, Exh. Q, p. 16)

On July 15, 1999, the Petitioner was indicted on two counts of robbery while armed and masked or disguised, in violation of Mass. Gen. L. c. 265, §17 (#6, p. 2) On August 21, 2000, the Petitioner filed a motion to suppress items

seized from the car he drove on the morning of the robbery and from the apartment where he was arrested after the robbery[2]. (#6, p. 2) A hearing on the motion to suppress was held, and the motion was denied in a order issued on or about December 18, 2000, in which Justice Toomey stated that:

> Having found that the police entry into and search of the motor vehicle was reasonable in light of the condition of the vehicle and the probable cause/exigent circumstances possessed by the officers, having found that the police entry into Kazen's apartment was supported by probable cause, exigent circumstances and consent and having found that items seized in the apartment were obtained incident to the lawful arrest of [the Petitioner], in plain view and in connection with a reasonable protective sweep of the apartment, the motion to suppress the items
> found in the vehicle and in the apartment is <u>denied</u>.

(#6, p. 3)(emphasis in original).

On December 22, 2000, the Petitioner filed a motion to extend the time for filing an interlocutory appeal of that decision until January 19, 2001, and this motion was allowed. (#6, p. 3) The docket does not reflect any steps taken

---

[2] In the motion to suppress, Petitioner argued: (1) that the police lacked probable cause or any other legal justification to search his vehicle; (2) that there were inconsistencies in the police officer's accounts and witnesses' accounts on this subject; (3) that he had standing to challenge the legality of the search of Kazen's apartment, in which he had a reasonable expectation of privacy, and that no consent was freely and voluntarily provided by anyone with authority to provide it; (4) there were no exigent circumstances to justify the search; (5) that the search in any event would have exceeded the scope of any such exigent circumstances; and (6) that the evidence seized was not in plain view or found as a result of a protective sweep. (#6, pp. 2-3)

by the Petitioner to commence such an appeal prior to the January 19th deadline. (#6, p. 3)  The Petitioner did file a motion for reconsideration of the denial of his motion to suppress on August 27, 2001. (#6, p. 4)  On August 30, 2001, the Superior Court allowed reconsideration but again denied the motion to suppress. (#6, p. 4)  On November 20, 2001, the Petitioner filed a notice of appeal and again moved for reconsideration of the denial of his motion to suppress, which was denied on November 23, 2001. (#6, p. 4)  On December 26, 2001, the Petitioner filed another notice of appeal.[3] (#6, p. 4)

The Petitioner was tried in the Superior Court in January, 2002, and the jury returned a verdict finding him guilty of unarmed robbery, a lesser offense to the one with which he was originally charged. (#6, p. 5)  On January 25, 2002, the Petitioner was sentenced to serve a term of between eight to ten years. (#6, p. 5)  The Petitioner filed a notice of appeal on February 13, 2002 and a motion to revise and revoke his sentence on March 4, 2002. (#6, p. 5) The Petitioner filed two additional notices of appeal, one on January 21, 2005 and one on January 27, 2005.[4] (#6, p. 6)  On March 21, 2003, the Petitioner's

---

[3] The record as submitted by the Respondent is silent as to the outcome of this appeal.

[4] The record as submitted by the Respondent is silent as to the outcome of these appeals.

direct appeal of his conviction was entered on the docket of the Massachusetts Appeals Court (hereinafter the "Appeals Court"). (#6, p. 6)

In connection with the motion to revise and revoke, the Petitioner's counsel filed a brief that in part contained certain arguments advanced pursuant to *Commonwealth v. Moffet,* 383 Mass. 201, 418 N.E.2d 585 (1981) and Petitioner supplemented that brief with two additional *Moffet* briefs which he filed *pro se.*[5] (#6, p. 6) Among the arguments asserted by the Petitioner were that the Superior Court erred in not suppressing seized evidence. (#6, p. 6) In a November 18, 2004 decision, the Appeals Court affirmed the judgment entered against the Petitioner, stating that it gave "due consideration to the various claims and reject[ed] them for substantially the reasons cited by the judges in their memoranda and rulings of law and by the Commonwealth in its brief." *Cabral,* 62 Mass. App. Ct. 1111, 818 N.E.2d 640 (2004)(unpublished disposition). On January 5, 2005, the Superior Court denied the Petitioner's motion to revise and revoke. (#6, pp. 5-6)

On March 18, 2005, the Petitioner filed an application for leave to obtain

---

[5] *Moffet* stands for the proposition that "[i]f there is nothing to support a contention which the defendant, despite counsel's attempts to dissuade him, insists on pursuing," it is "preferable that counsel present the contention succinctly in the brief in a way that will do the least harm to the defendant's cause." *Moffet,* 383 Mass. at 208, 418 N.E.2d at 591 (citations omitted).

further appellate review with the Massachusetts Supreme Judicial Court ("SJC"). (#6, p. 7)  On April 27, 2005, the SJC denied the application. (#6, p. 7; #8, Exh. S) The Petitioner filed the instant petition on May 20, 2005. (#1)

### III.  Discussion

A.  The Statute and Petitioner's Grounds for Relief

Title 28 U.S.C. § 2254(d), the applicable habeas corpus statute, sets out that:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Petitioner asserts that he is entitled to habeas relief based on the following ground:

> Ground one:   Petitioner's 4th and 14th Amendment rights were violated when evidence obtained pursuant to an unconstitutional search and

|   |   |
|---|---|
|   | seizure was relied upon to find him guilty. (#1, "Additional Pages") |
| Supporting Facts: | Petitioner's automobile was unlawfully searched, and items recovered from within unlawfully seized, by police who then used the unlawfully seized evidence to convict petitioner[6]. |
|   | Additionally, police made a warrantless entry into a third-party dwelling, where petitioner had a reasonable expectation of privacy, and searched a pocketbook lawfully therein, that they had no probable cause to search, where no exigent circumstances existed, thereby obtaining fruits of the poisonous tree, which was improperly and unconstitutionally used against Petitioner at trial[7]. (#1, "Additional Pages") |

B.  The Effect of the Holding in *Stone v. Powell* on Petitioner's Claim

In his sole ground for a writ of habeas corpus, the Petitioner asserts that his conviction was obtained by use of evidence gained pursuant to an unconstitutional search in violation of the Fourth Amendment. (#1) The Respondent contends that the Petition must be dismissed because it is

---

[6] Petitioner subsequently dropped the contention that the automobile was illegally searched and the items therein were illegally seized. (#12, p. 13)

[7] Recitation of supporting facts is verbatim from the Petitioner's "Additional Pages" of his Petition for a Writ of Habeas Corpus (#1).

predicated entirely on an allegation that the Petitioner's rights under the Fourth Amendment to the United States Constitution were violated, a claim which was the subject of full and fair litigation in State Court, including an evidentiary hearing and an appeal, and as such may not serve as the basis for habeas relief. (*See generally* #6)

Thus, the issue that this Court must examine is whether the Petitioner was provided an opportunity for full and fair litigation of his Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 482 (1976)(holding that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"); *accord Sanna v. DiPaolo,* 265 F.3d 1, 8-10 (1 Cir., 2001); *see also Palmigiano v. Houle,* 618 F.2d 877, 878-883 (1 Cir., 1980), *cert. denied,* 449 U.S. 901 (1980); *Pignone v. Sands*, 589 F.2d 76, 77(1 Cir., 1978). In other words, if indeed the Petitioner were afforded an opportunity to litigate fully his Fourth Amendment claim at the state court level, then he is not entitled to federal habeas relief.

In *Stone,* the Court based its decision to bar habeas relief predicated on

Fourth Amendment claims because the "exclusionary rule was a judicially created means of effectuating the rights secured by the Fourth Amendment," and reasoned that the "additional contribution, if any" of consideration by federal habeas courts of search-and-seizure claims was "small in relation to the costs" imposed by such review. *Stone,* 428 U.S. at 482, 493. The Respondent here cites to the reasoning in *Stone* and asserts that "[s]uch costs may include 'deflect[ion] of the truthfinding process' and 'potentially free[ing] the guilty', thus affording a guilty defendant a windfall that is 'contrary to the idea of proportionality that is essential to the concept of justice[.]'" (#6, p. 9)(quoting *Stone,* 428 U.S. at 490-92) (internal quotations omitted). The court in *Stone* rejected the notion that the state courts were not competent forums for the adjudication of Fourth Amendment claims, and stated:

> [W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States. State courts, like federal courts, have a constitutional obligation to safeguard personal liberties and uphold federal law....Moreover, the argument that federal judges are more expert in applying federal constitutional law is especially unpersuasive in the context of search-and-seizure claims, since they are dealt with on a daily basis by trial judges in both systems. In sum, there is no intrinsic reason why the fact that a man is a federal judge should make him

> more competent, or conscientious, or learned with respect to the (consideration of Fourth Amendment claims) than his neighbor in the state courthouse.

*Stone,* 428 U.S. at 493-94, n. 35 (internal citations and quotations omitted).

The holding in the *Stone* case is that a federal court cannot ordinarily review a state court's disposition of a Petitioner's Fourth Amendment claims in a petition for writ of habeas corpus unless the Petitioner can meet a narrow exception, i.e., that the Petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system. *E.g. Sanna,* 265 F.3d at 8; *Palmigiano,* 618 F.2d at 881-82; *Breest v. Helgemoe,* 579 F.2d 95, 98 (1 Cir., 1978), *cert denied,* 439 U.S. 933 (1978).

In arguing that the state courts ignored the Fourth Amendment claim based on the search of the dwelling home, the Petitioner argues that his case avoids the *Stone* bar to habeas relief because the Commonwealth deprived him of the opportunity for full and fair litigation of his Fourth Amendment claim. (#12, p. 3)  To the extent that the Petitioner seeks to assert that he did not have a full and fair opportunity to litigate this claim in state court, the burden of proof is on the Petitioner. *See Sanna,* 265 F.3d at 8.

And, as expected, the Respondent contends that the Petitioner cannot meet

this burden. (#6, p. 10) The Respondent contends that the Petitioner did indeed have a full and fair opportunity to litigate his Fourth Amendment claims at the state court level and delineates the many opportunities and procedures afforded to the Petitioner to litigate this claim. (#6, p. 10)

For example, the record clearly indicates that the Superior Court entertained the Petitioner's motion to suppress the seized evidence at issue, conducted a hearing on the motion and then proceeded to deny the motion based on findings made by the court in light of the arguments presented by the Petitioner. In addition, the Respondent points to the fact that the court granted an extension of time for the Petitioner to file a notice of appeal of that decision, but the Petitioner failed to file any appeal in advance of the new deadline. (#6, p. 10) *See Caver v. Alabama,* 577 F.2d 1188, 1193 (5 Cir., 1978)(holding that habeas review is precluded if state provides a suitable procedure for full and fair opportunity to litigate Fourth Amendment claims, regardless of whether the petitioner "avails himself of that opportunity."). Upon further motion, the court decided to reconsider the original denial of the motion to suppress but reached the same result. (#6, p. 11)

The Respondent also contends that "while a notice of appeal of these

decisions was deemed ineffective by the court, that decision was based on the fact that Petitioner had failed to timely file it, and as a result, the Petitioner filed yet another timely motion to reconsider the decision on the motion to suppress, and it was denied." (#6, p. 11) In addition, the Respondent points out that following the Petitioner's conviction, the Petitioner commenced a direct appeal of his conviction, which in part raised the same Fourth Amendment challenges as the Petitioner raises in this instant action. (#6, p. 11)  In review of the Petitioner's appeal, the court indicated that it gave "due consideration to the various claims," but nevertheless "reject[ed] them for substantially the same reasons cited by the judges in their memoranda and rulings of law and by the Commonwealth in its brief." *Cabral,* 62 Mass. App. Ct. 1111, 818 N.E.2d 640 (2004)(unpublished disposition).  At that point, Petitioner filed an application for leave to obtain further appellate review with the SJC, but the application was denied. (#8, Exh. T)  Thus, it is clear to this Court that the state provided a suitable procedure for a full and fair opportunity to litigate the Fourth Amendment claim that Petitioner now asserts in the instant action.

As the court in *Sanna* explained:

> Although a federal habeas court may inquire into the adequacy and fairness of available state court

14

> procedures for the adjudication of Fourth Amendment claims, its inquiry ordinarily ends upon a determination that those procedures pass muster....Put another way, a "full and fair opportunity" to litigate means that the state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations.

*Sanna,* 265 F.3d at 8-9.

In the instant case, the state court procedures for the adjudication of Fourth Amendment claims obviously "pass muster." There is no evidence in the record that the Petitioner did not have available to him suitable procedures for review of his Fourth Amendment claim. Indeed, the evidence is to the contrary–the Petitioner had several opportunities to present and receive decision upon his Fourth Amendment claim. Thus, given that the Petitioner had a "full and fair opportunity" to litigate his search-and-seizure claim, there is no basis for granting a writ of habeas corpus.

C. <u>Petitioner's Arguments on the Merits of His Fourth Amendment Claim</u>

Seeming to realize that a claim that he did not have a fair chance to litigate his Fourth Amendment claim is futile, the Petitioner goes on to argue the merits of his Petition rather than challenge the adequacy of the state court procedures. He challenges the state court's factual findings on two theories. (#12, p. 3)  As the Petitioner correctly acknowledges in his own argument, under § 2254(e)(1),

a determination of a factual finding made by a state court shall be presumed to be correct. (#12, p. 3) Thus, in order for his arguments to have any validity, the Petitioner must rebut this presumption by clear and convincing evidence.[8] First, in the Petitioner's opinion, the state courts ignored his Fourth Amendment claim as to the search of Kazen's apartment, and thus pursuant to *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992), he must be heard on the merits of his unaddressed Fourth Amendment claim. *Id.* Second, the Petitioner asserts that the state court's decision on the motion to suppress was based on an unreasonable determination of the facts[9]. (#12, p. 10)

The Petitioner's first theory is that his own attorney in the August 21, 2000 motion to suppress evidence did not mention the Fourth Amendment claim that he puts at issue in this Petition.[10] (#12, p. 3) The Petitioner also seems to assert

---

[8] "Where 28 U.S.C. § 2254 applies...[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003).

[9] The Petitioner also makes a passing reference in his Opposition brief that his counsel was ineffective. (#12, p. 15) However, such a ground was not presented in his Petition and thus shall not be addressed by this Court. Moreover, the Court need not even address merits-based arguments since it has already determined that the Petition should be dismissed based on *Stone v. Powell*. However, to foreclose further inquiry, the Court shall briefly address the Petitioner's arguments.

[10] It is unclear whether the Petitioner is putting forth an exhaustion argument (i.e., that his Fourth Amendment claim has not been exhausted) or an argument on the merits. If the claim were unexhausted, which it is not, the Petition would have to be dismissed on non-exhaustion grounds. To the extent that the

that the "seizure" issue but not the "search" issue was presented to and ruled upon by the state courts. However, the Petitioner presents a synopsis of his counsel's memorandum of law in support of the first motion to suppress which clearly encompasses the disputed search issue and the items seized therein. (#12, pp. 4-5) Moreover, the Petitioner concedes that, "[t]hroughout [counsel] Nadeau's memorandum of law he clearly contested the search in the dwelling home of John Kazen." (#12, p. 5)

The Respondent points out that the denial of the motion to suppress by the state court took into consideration the search claim asserted by the Petitioner and made its decision based on the following findings: the search of the vehicle was warranted by probable cause and exigent circumstances; the entry into the apartment was supported by probable cause, exigent circumstances, and consent; and items therein were in plain view and were seized incident to a lawful arrest and in connection with a reasonable sweep of the apartment. (#6, p. 10)(quoting #8, Exh. I). Thus, because the same issue that was presented in the instant habeas was fully looked at by the state courts, the Petitioner's first theory provides no basis for the issuance of a writ of habeas corpus.

---

Petitioner is making a merits argument, there is little basis for such a claim and in any event, the Petition must be dismissed for the reasons discussed *supra*.

The Petitioner's next argument appears to be that the state courts "refused to reach and decide the issues of the facts tendered by the petitioner." (#12, p. 11) This argument is, in all practical ways, a duplication of the first argument – that the state courts did not fully review the Petitioner's search-and-seizure claim. Thus, for the same reasons discussed above, this second argument is not enough to provide a basis for a writ of habeas corpus.[11] Because the Petitioner had ample opportunity to litigate his Fourth Amendment claim fully and fairly in the state courts, this Court shall recommend that the Petition be dismissed.

### *IV. Recommendation*

For the reasons stated above, I RECOMMEND that the Respondent's Motion to Dismiss Petition (#5) be ALLOWED.

### *V.  Review by the District Judge*

The parties are hereby advised that pursuant to Rule 72, Fed. R. Civ. P., any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must

---

[11] The Petitioner's 12-page Memorandum in Support of § 2254 Petition of Anthony Cabral is a restatement of the Fourth Amendment claim and is mainly dedicated to the citation of cases, many of them inapposite, that do little to advance the Petitioner's argument.  The bottom line is that the Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim at the state court level.  He has not demonstrated otherwise and thus is not entitled to a writ of habeas corpus.

specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

December 8, 2005.